UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATALIA VOLKOVA, Individually and as Trustee of the ESTATE OF ALEXANDRE VOLKOV, deceased,<br><br>               Plaintiff,<br>v.<br><br>C.H. ROBINSON COMPANY, INC., et al.,<br>               Defendants. | No. 16 CV 1883<br><br>Judge Ronald A. Guzmàn |

**Rulings on Plaintiff's Motions in Limine**

All pretrial rulings on motions in limine are provisional. The evidence or arguments of the attorneys during trial may require the Court to reconsider any of the following rulings.

1. <u>References to Plaintiff's suit as a social burden</u>. Pursuant to Federal Rules of Evidence ("FRE") 402 and FRE 403, Plaintiff seeks an order an order barring Defendants, their attorneys, witnesses, and all other persons involved in this case from arguing or suggesting that Plaintiff's suit "is unfortunately the type of thing that places a burden upon us all" and increases the cost of living.

    RULING: The motion is granted without objection. This ruling does not bar Defendants from pointing out the impracticality of any precautions Plaintiff alleges Defendants should have taken but did not. This includes evidence as to the time and cost of undertaking any such precautions.

2. <u>References to damages request being higher than amount expected</u>. Plaintiff seeks an order barring Defendants' counsel from arguing or implying that Plaintiff's request for damages is higher than the amount she expects to be awarded.

    RULING: This motion is granted. However, this ruling does not bar Defendants from arguing that Plaintiff's damages request is excessive and/or disproportionate to the actual injury/loss.

3. <u>References to witnesses not called to testify</u>. Pursuant to FRE 402 and 403, Plaintiff seeks an order barring references by Defendants, their attorneys, witnesses, and all other persons involved in this case to witnesses who were equally available to both parties but were not called to testify and barring any argument about the reason such witnesses were not called by Plaintiff.

> RULING: This motion is granted as to all parties. All parties have indicated that they do not believe there exist any witnesses available to one side who are not also available to be called by the other side. Therefore, no party is entitled to argue that the other party failed to call a witness to testify because that the witness' testimony would be unfavorable to that party.

4. <u>References to motions in limine or objections</u>. Plaintiff seeks to bar references to motions in limine or objections, or suggestions in the presence of the jury that, by asserting objections, a party is attempting to hide information from the jury.

> RULING: This motion is granted as to both. Neither party may suggest to the jury that the other is attempting to hide evidence by making an objection or asserting a prior evidentiary ruling.

5. <u>Counsel's Opinion</u>. Pursuant to FRE 402, FRE 403, and FRE 602, Plaintiff requests an order barring Defendants' counsel from expressing personal opinions about matters presented at trial, including Plaintiff's request for damages.

> RULING: This motion is granted as to all parties. Counsel's personal opinions about the merits of the case are irrelevant and improper argument.

6. <u>Lay witness testimony outside of personal knowledge</u>. Plaintiff seeks to preclude witnesses without personal knowledge from testifying pursuant to FRE 602, which provides that witnesses "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

> RULING: This motion is withdrawn.

7. <u>Undisclosed witnesses</u>. Plaintiff asks that Defendants be barred from presenting any witnesses, opinions, experts, or otherwise, not previously listed in answers to interrogatories or otherwise disclosed during discovery and in the Joint Proposed Final Pretrial Order.

> RULING: This motion is granted and applies to all parties. Nevertheless, in the rare event that a party realizes that, because of some unexpected occurrence during the trial, it needs to call a witness not previously listed, this ruling may not apply. A determination in this respect will be made by the Court during trial should the need arise.

8. <u>Undisclosed evidence</u>. Pursuant to FRE 402 and FRE 403, Plaintiff requests an order barring Defendants from admitting into evidence any documents or materials not previously produced or identified in response to requests for production of documents.

> RULING: This motion is granted without objection and applies to all parties.

9. <u>That Plaintiff withheld relevant evidence</u>. Pursuant to FRE 402 and FRE 403, Plaintiff requests an order barring Defendants and their attorneys from making any statement that

Plaintiff's counsel has withheld evidence from the jury which would have been an important factor in its determination of the case.

>RULING: This motion is granted without objection and applies to all parties.

10. <u>Volkov's role</u>. Plaintiff seeks to bar any argument or suggestion that the decedent, Alexandre Volkov, was somehow at fault in causing the subject collision, including that he was fatigued or drove over the number of hours permitted by federal regulations.

>RULING: The motion is denied. In Illinois, a plaintiff cannot recover for negligence if his own contributory negligence/comparative fault is more than fifty percent responsible for his injury. Therefore, evidence of contributory negligence is relevant. Generally, the issue of contributory negligence is a question of fact for the jury, but it may become a question of law "when all reasonable minds would agree that the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Coole v. Cent. Area Recycling*, 893 N.E.2d 303, 309 (Ill. App. Ct. 2008) (citation and internal quotation marks omitted). There appears to be at least some evidence that suggests that the decedent may have contributed in some way to the cause of this accident. The Court is not prepared at this time to bar Robinson from attempting to establish contributory negligence through competent evidence. To obtain such a ruling on a key factual question prior to trial, Plaintiff would have to present an exhaustive review of all the evidence bearing on the issue in proper context, and the Court is not convinced this has been done. Nor is the evidence of contributory negligence, such as it is, prejudicial in the sense that it could cause the jury to reach a determination based upon improper inferences regarding the decedent's character or other irrelevant, irrational, or emotional considerations. The motion is denied without prejudice. Defendants have stipulated that they will not be introducing evidence of the decedent's old log book violations which occurred while he was with a previous employer.

11. <u>Independent contractor designation</u>. Plaintiff seeks to bar Robinson, through counsel, witnesses, or documentary evidence, from arguing or suggesting that the "independent contractor" label used in the carrier agreement is dispositive or controlling on the issue of agency.

>RULING: This motion is denied insofar as it seeks to bar Defendants from arguing the importance or effect of the language in the contract as a factor in determining the relationship of the parties. Neither side will be allowed to argue that as a matter of law, the jury must decide the issue of agency based solely on contract terminology or some applicable regulation. The Court will instruct the jury on the appropriate law as it relates to the question of agency in this case. If, as Robinson argues (Dkt. #171), the evidence shows that it was in a contractual relationship with Antioch, then the contract between Robinson and Antioch would be of some relevance in determining the relationship between Robinson and Nguyen. The language in the contract between Robinson and Antioch is, therefore, one factor that the jury may consider in determining the nature of

the relationship between Robinson and Nguyen. The parties are free to argue the importance of each of the relevant factors bearing on the question of agency, but neither side will be allowed to argue conclusions of law.

12. <u>Expert Lane VanIngen</u>. Plaintiff seeks to bar certain opinions of Robinson's retained expert Lane VanIngen.

RULING: This motion has been withdrawn.

13A. <u>Expert Andrew Sievers</u>. Plaintiff seeks to bar all opinions of Robinson's retained expert Andrew J. Sievers based on FRE 401, 402, 403, and 702.

**Opinion # 1**: Transportation brokerage provides a function distinct from motor carriers, which creates value and efficiency for the National Transportation System.

RULING: The objection to this opinion is overruled insofar as it seeks to bar testimony that transportation brokers provides a function distinct from motor carriers. In deciding whether in this case there was also an agency relationship between Robinson, a broker, and Antioch/Nguyen, a carrier, it is of some relevance for the jury to know their different functions. Thus, in that respect, the Court overrules the objection. In addition, an expert is allowed to provide general information about a particular industry or field in his area of expertise that would be helpful to the jury in understanding the facts and issues in the case. Sievers' testimony that a freight broker is a company that serves as a liaison between a company that needs shipping services and an authorized motor carrier will be allowed.

There is a second part to this opinion. Plaintiff argues that Sievers' opinions on the importance of the role and value of transportation brokerage in America are irrelevant to the issues of this case. The Court agrees with Plaintiff. In addition, the very slight probative value such evidence might have would be overshadowed by the likelihood of prejudice to Plaintiff in that such an opinion may cause the jury to feel sympathy or bias towards the "important" brokerage sector of the industry as opposed to Plaintiff. Furthermore, if Robinson is permitted to inform the jury of the importance of its work, then Plaintiff must be allowed to do the same. The trial would be unnecessarily prolonged, and the jury would likely be confused by the resulting satellite litigation regarding the importance to the nation of the functions of the parties. Therefore, the objection to this opinion is sustained.

**Opinion # 2**: Antioch was the motor carrier for the load at issue in this case; and **Opinion # 4**: The record contains certain facts relevant to understanding Robinson's role in the transaction; Robinson was the broker on the load.

RULING: Plaintiff objects that these opinions as being irrelevant to the legal determination of agency. One of the primary issues in this case is whether Nguyen and/or Antioch were Robinson's agents at the time of the accident, and the jury's answer to this question will determine whether Robinson is vicariously liable for Nguyen or Antioch's alleged negligence. Whether such a relationship existed will be determined by

4

the jury when it applies the legal definition of agency as provided by the Court to the facts in this case. To this extent, then, the Court agrees with Plaintiff.

Nevertheless, as Robinson and the Court's ruling above point out, an expert is allowed to explain customs and practices regarding how relationships and transactions are customarily structured in a particular industry—an issue about which jurors may have little knowledge. Sievers' opinion on these matters would then be one of the factors the jury could consider in determining whether an agency relationship existed in the case at bar.

That being said, an expert may not testify in a manner that it is likely to confuse the jury. In this case, the expert goes well beyond explaining the use of industry terminology and/or the common practices between carriers and brokers. For example, in explaining that each party has distinct roles and responsibilities within the transportation industry, Sievers goes on to note that these roles are based on the applicable regulations, agreements and contracts of the parties, industry practices, and the conduct of the parties. This sounds like an instruction on the law regarding the determination of the alleged agency relationship central to this case. What factors the jury should consider in determining the relationship or roles between the parties in this case is a question of law and Sievers' opinion in this regard is irrelevant.

Furthermore, Sievers is not qualified to opine as to how agreements or contracts should be interpreted in order to determine the question of agency. His opinion, couched as it is in terms of the relationship of the parties in the industry generally, is very likely to confuse the jury. It is not the parties' differing roles in the industry that is at issue in this case. Rather, it is the role of the parties in relation to each other with respect to this particular shipment that the jury must decide. The manner in which Sievers has phrased this opinion is likely to, and in fact is probably intended to, conflate these two issues and thereby confuse the jury.

Sievers may, of course, explain his understanding of the roles of the brokers and carriers based upon industry practices and customs. But he may not do so in a way that will confuse the jury into concluding that the roles of the brokers and carriers in the industry is controlling as to the existence of a principal/agent relationship between the parties in this case.[1] Nor does there appear to be any dispute that a motor carrier is

---

[1] Sievers also quotes and cites federal statutes and regulations, *e.g.*, 49 U.S.C. § 13102, and sections of the Federal Motor Carrier Safety Regulations ("FMCSR"), and then applies his interpretation of these sources to the facts that he deems relevant in order to determine the role and function of the parties. (Dkt. # 221-1, at 5). In his expansive review of FMCSR, which he believes supports his opinion that Antioch was the motor carrier and Robinson the broker, Sievers opines that "[b]rokers are prohibited from misrepresenting themselves as motor carriers or as anything other than providers of brokerage services registered with FMCSA [Federal Motor Carrier Safety Administration]." (*Id.*) This language would appear to be irrelevant, or at best tangentially relevant, to the issues in this case. There is no evidence of misrepresentation by Robinson. Sievers also opines that Antioch, as a California corporation, was distinct from

responsible for the safe operation of its vehicles and that party acting solely as a broker does not share in that responsibility. Indeed, it would appear the parties may stipulate to at least that much.

Because the Court has sustained objections to much of Sievers' proposed testimony as irrelevant, inappropriate expert opinion and/or unnecessarily confusing to the jury, if he is to be offered as an expert witness at trial, Robinson must submit a renewed statement as to what his testimony in support of his Opinions # 1, # 2, and # 4 will be in light of the Court's rulings as indicated in open court.

**Opinion # 3**:   That Antioch was Nguyen's employer.

RULING:  This opinion has been withdrawn.

**Opinion # 5:**   The Nguyens were not owner-operators of Robinson

RULING: The opinion has been rendered irrelevant and is withdrawn.  It was offered to rebut plaintiff's expert's opinion of owner-operator status. Plaintiff has withdrawn her expert's statement to that effect and this rebuttal is, therefore, unnecessary.

**Opinion # 6:**   Robinson did not exercise control over Antioch or Nguyen. Antioch, through its co-owners/drivers, controlled the means and manner of driving.

RULING:  The objection to this opinion is sustained.  Based on his experience, Sievers can testify to the role of a broker as opposed to that of a motor carrier, and whether it is rare for a broker to exercise control over the motor carrier.  Sievers can testify as to whether the roles of the parties in this case appear to him to be the same or similar to those he has previously seen or been involved in during his numerous years in the industry.  He may testify as to how motor carriers generally conduct themselves in the industry, *e.g.*, pay their own gasoline bills, etc., but he may not marshal the facts as to the relationship between these two parties in this particular transaction (contractual terms, past practices, federal laws and regulations, the legal status of Antioch, etc.) and then

---

Nguyen, an individual. He goes on to cite facts, such as who paid business expenses, the existence of separate bank accounts, etc. – the traditional legal determinants of a valid corporate existence - in support of his conclusion that Antioch was a separate legal entity from Nguyen. Sievers is not qualified to give such an opinion.  Sievers also opines that: "Antioch's past practice of working as a motor carrier is further evidence that on the load in question, Antioch Transport was continuing to perform as a motor carrier."  Here, Sievers appears to be applying the law of contract interpretation (past practices) to explain and support his opinion as to what Antioch's contractual responsibilities are.  This is not his function and he is not an expert on how past practices affect the interpretation of the intent of the parties when entering into a contract. Nor does the Court find that past experience qualifies him to opine on how the jury should consider the past practices of the parties in deciding their present intent. This testimony is not allowed.

opine as to whether there was an agency relationship. The jury will be tasked with weighing all of the many relevant factors, including Sievers' explanation of the different functions between brokers and operators, in deciding the question of agency.

**Opinions # 7, # 8, # 9, and # 10 are withdrawn.**

14. <u>Expert Dr. Steven White</u>. Plaintiff seeks to exclude certain opinions of Defendants' expert Dr. Steven White.

**Opinion # 3**: There is no medical or pathological basis for Dr. Michael Kaufman (expert medical consultant and a pathologist) to determine that Volkov experienced conscious pain and suffering; and **Opinion # 5**: With cerebral edema (brain swelling), it is possible that Volkov had a pulse and was unconscious, experienced no pain, or suffered from paralysis.

RULING: Dr. White is offered as a rebuttal witness to plaintiff's expert, Dr. Kaufman. To the extent that Dr. Kaufman is not going to render an opinion on conscious pain and suffering of Volkov, then it becomes unnecessary for Dr. White to render a counter or a rebuttal opinion. During argument, Plaintiff's counsel indicated that Dr. Kaufman will not be called upon to opine as to conscious pain and suffering. Therefore, Dr. White's testimony in that respect is withdrawn. Therefore, Plaintiff's motion is denied as moot insofar as it is challenging Dr. White's Opinions # 3 and # 5.

**Opinion # 6**: Volkov had evidence of co-morbid diseases, including coronary atherosclerosis (coronary artery disease) and hypertension (high blood pressure) and was a smoker, all of which are associated with shortened life expectancy and increased risk of sudden death and would have been present prior to the death (pre-existing conditions).

RULING: The objection to Dr. White's Opinion # 6 is overruled. Dr. White will opine that as a result of these conditions, Mr. Volkov's life expectancy is 10 years shorter than that of someone without these conditions. Plaintiff objects that Dr. White's opinion is speculative and will only serve to confuse the jury, not help them. The Court disagrees. Dr. White's opinion appears to be based on medical findings and the effects of such medical conditions on Volkov's life expectancy. Plaintiff counters that there is contrary evidence from Dr. McElligott, who conducted the autopsy, and also Dr. Kaufman's opinion. In addition, the United States Statistical Life Expectancy statistics for a 55-year-old -- 54-year-old white man already account for the average incidence of the co-morbidity diseases referred to by Dr. White. What Plaintiff describes is the existence of conflicting evidence--weighing and reconciling conflicting evidence is the jury's function.

15. <u>Robinson's contribution/indemnity</u>. Plaintiff seeks to sever Robinson's contribution/indemnity claims against Nguyen and Antioch from the trial of the underlying action.

RULING: This motion is withdrawn.

7

16. <u>Verdict Form</u>. Plaintiff seeks to list Nguyen and Antioch together on the same line in the verdict forms.

> RULING: This motion is granted. During the final pretrial conference, Plaintiff stated unequivocally that she would not be presenting any evidence or argument to show that Antioch was negligent in its supervision of Nguyen. Rather, she would be proceeding purely on a theory that Antioch's liability was vicarious and based solely on Nguyen's negligence (and not the independent basis of a failure to supervise). In reliance on this representation, defense counsel agreed that there would be no basis for an alternative finding of negligence and that Antioch and Nguyen should be listed on the same line in the verdict form for purposes of determining relative fault. As Robinson's alleged negligence is also purely derivative of Nguyen's alleged negligence, there is only one issue of contributory negligence remaining and that is between Nguyen and Volkov.

17. <u>Insurance Certificate</u>. Plaintiff seeks to introduce evidence that Robinson specifically required Dung Nguyen to name Robinson on the tractor-trailer's insurance certificate.

> RULING: This motion is granted. Robinson voices no opposition to the admission of the certificate of insurance itself or other evidence that the contract with Antioch required Robinson to be named as an insured and this is the only issue the current motion addresses. Robinson does object to the characterization of the contract as being between Nguyen and Robinson, but that is a separate matter not addressed in the instant motion; accordingly, the Court provides no ruling as to this latter objection.

18. <u>Autopsy Photographs</u>. To allow autopsy photographs of Alexandre Volkov to aid the jury in determining the extent of his pain and suffering prior to death.

> RULING: This motion is denied. The photographs were not timely produced during discovery. Plaintiff first produced these photographs a year after the close of discovery and after all depositions had been taken. Plaintiff is given leave to review the record of discovery proceedings. If this review reveals additional information about the production of the photographs, Plaintiff may reopen the issue.

19.    <u>Video Depositions</u>.  Plaintiff moves to be allowed to use video depositions at trial even if defendant calls the witness to give live testimony at trial.

RULING:  The parties jointly announced that this motion is withdrawn.  Upon further inquiry, the Court finds that there is some misunderstanding as to what the motion addresses. Therefore, the Court makes the following provisional ruling.  Plaintiff will be allowed to allow to use the video depositions of these witnesses, as well as that of Jeff St. Marie, and Defendants will have the right to call them as witnesses in their case, should they decide to do so.  The Court reserves the right to restrict the use of any deposition testimony that will unduly prolong the trial because it is redundant or otherwise unnecessary.

**Date**:  April 23, 2019

                                              **Ronald A. Guzmàn**
                                              **United States District Judge**