# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **NATALIA VOLKOVA**, Individually and as Trustee of the **ESTATE OF ALEXANDRE VOLKOV**, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No.: 1:16-cv-01883 |
| v. | )<br>) Judge: Hon. Ronald A. Guzman |
| **C.H. ROBINSON COMPANY, INC., C.H. ROBINSON WORLDWIDE, INC., DUNG QUOC NGUYEN**, and **ANTIOCH TRANSPORT, INC.,** | )<br>) Magistrate Judge: Hon. Maria Valdez<br>)<br>)<br>) |
| Defendants. | ) |

## NOTICE OF FILING

**TO:**  Christopher M. Norem  Jamie S. Lane
Cole H. Munvez  Peter M. Henry
Law Offices of Parente & Norem, P.C.  SmithAmundsen LLC
221 N. LaSalle Street, 27th Floor  150 N. Michigan Avenue, Suite 3300
Chicago, IL 60601  Chicago, IL 60601

**PLEASE TAKE NOTICE** that on May 14, 2019, C.H. Robinson Company, Inc. and C.H. Robinson Worldwide, Inc. filed in open court before the Honorable Ronald A. Guzman, in Courtroom 1219 in the Everett McKinley Dirksen Building, 219 S. Dearborn Street, Chicago, Illinois, 60604, the attached **Robinson's Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(a)**, a copy of which is attached and hereby served upon you.

Date: May 14, 2019  By:  /s/ William J. Ryan
  One of the Attorneys for the C.H. Robinson Defendants

William J. Ryan (#6208379)
Eric J. Muñoz (#6275565)
Joseph R. Swee (#6321593)
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, Illinois 60603
Phone: (312) 580-2020
Fax: (312) 782-3806

# CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2019, a copy of the foregoing **Robinson's Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(a)** was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.

/s/ William J. Ryan

SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, Illinois 60603
Phone: (312) 580-2020
Fax: (312) 782-3806
E-mail: wryan@scandagliaryan.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **NATALIA VOLKOVA**, Individually and as Trustee of the **ESTATE OF ALEXANDRE VOLKOV**, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | ) **Case Number:** 1:16-cv-01883 |
| v. | )<br>) **Judge:** Hon. Ronald A. Guzman |
| **C.H. ROBINSON COMPANY, INC.**, **C.H. ROBINSON WORLDWIDE, INC., DUNG NGUYEN QUOC NGUYEN**, and **ANTIOCH TRANSPORT, INC.**, | )<br>) **Magistrate Judge:** Hon. Maria Valdez<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## ROBINSON'S MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 50(a)

Pursuant to Federal Rule 50(a) of the Federal Rules of Civil Procedure, Defendants C.H. Robinson Company Inc. and C.H. Robinson Worldwide, Inc. ("Robinson") respectfully move for judgment as a matter of law in Robinson's favor and against Plaintiff on the claim that Dung Quoc Nguyen was Robinson's agent. In further support of its motion, Robinson states as follows:

## LEGAL STANDARD GOVERNING JUDGMENT AS A MATTER OF LAW

A judgment as a matter of law ("JMOL") under FRCP 50 is appropriate if, after "a party has been fully heard on an issue during a jury trial[,] ... a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 18-2622, 2019 WL 1855397, at *5 (7th Cir. Apr. 25, 2019) To avoid judgment, Plaintiff "must offer substantial affirmative evidence to support her argument." *Id*. Plaintiff has not met her burden on agency.

# ARGUMENT

I. **ROBINSON IS ENTITLED TO JMOL ON AGENCY BECAUSE PLAINTIFF FAILED TO PRESENT A LEGALLY SUBMISSIBLE CASE THAT DUNG WAS THE AGENT OF ROBINSON.**

Plaintiff claims that Dung was the agent of Robinson at the time of the subject accident. However, Robinson is entitled to JMOL because Plaintiff has failed prove the essential elements that would establish agency as to Dung under the Court's instruction to the jury and Illinois law.

    A. **Plaintiff Has Failed to Prove an Agreement Between Dung and Robinson.**

To submit the issue of agency between Dung and Robinson to the jury, Plaintiff had to demonstrate that Dung "**by agreement** with [Robinson] does some service for [Robinson] with or without compensation."  (Court's preliminary instruction, attached as Exhibit A.) The agreement "may be oral or written, express or implied." (*Id*.)

- The evidence is there was no agreement "of any kind" between Dung and Robinson. (CHRTX 21, Dung RFA Nos. 30 and 31; CHRTX 19, Antioch RFA No. 5.)

- The evidence is that "at no time prior to the Accident did Robinson ever give [Dung] the authority to enter into agreements, sign contracts or negotiate on behalf of Robinson." (CHRTX 21 at Dung RFA No. 28.)

- The only agreement in this case was the Contract (JTX 1) and Contract Addendum (JTX 5) under which *Antioch* – not Dung – agreed to haul the subject load for Robinson's customer as an independent contractor. (Stmt. Of Uncontested Facts, Doc. No. 255 at pg. 12 ["SUF"] ¶¶ 7, 12, 13; CHRTX 19, RFA Nos. 2, 8; Dung Nguyen Trial Tr. at 38, 42, 45-46, attached as Exhibit B [hereinafter "Dung Trial Tr." to distinguish from Andrew Nguyen].)

Contrary to Plaintiff's theory, Robinson's contract with Antioch cannot be used to establish an agreement with Dung. It is a fundamental principle of law that a corporation is an entity separate and distinct from its shareholders. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *In re Estate of Wallen,* 262 Ill. App. 3d 61, 68 (2d Dist. 1994). It is undisputed that defendant Antioch was a California corporation with multiple owners and multiple drivers (SUF

at ¶¶ 2-3; Ex. B, Dung's Trial Tr. at 62). It is undisputed that Antioch conducted business as a motor carrier exclusively in the corporate name of Antioch Transport Inc: it held motor carrier authority, insurance, and ownership of the tractor trailer all in the name of the Antioch Transport Inc. (Ex. B, Dung Trial Tr. at 38-39; CHRTX 19, Antioch RFA No. 4; SUF at ¶ 5.) Antioch maintained a separate corporate bank account and paid Dung a salary and issued him a W-2. (Ex. B, Dung Trial Tr. at 39; 57.) Robinson paid Antioch for deliveries directly into Antioch's corporate bank account. (*Id*. at 43, 57.) Thus, when Dung signed the contract and conducted business with Robinson, the facts are uncontested that Dung was acting on behalf of Antioch, the corporation. (*Id*. at 10, 38, 42, 51-52.)

The evidence is also insufficient to support a finding of an implied agreement between Robinson and Dung. The evidence is uncontested that when Robinson contracted with Antioch to haul this load Robinson did not know Dung would be driving. (Sam Pratt Dep. Designation at 112-113, attached as Exhibit C.) There is no evidence of any kind that Robinson was aware that Dung was driving. Every Robinson witness who was asked testified that they did not know who Dung was or that he was even driving on the subject load. (Ex. C, Pratt Dep. Designation at 61-62, 112-113; Eric Gershenson Dep. Designation at 57, attached as Exhibit D; PTX 19.) The evidence established that Robinson was told that Antioch had three drivers other than Dung: Andrew, Trai, and Juan (JTX 5; CHRTX 26 and CHRTX 27; PTX 19 at CHR-Volkova 137.) In fact, the evidence is that Robinson knew Dung only as an owner (JTX 1); there is no evidence that Robinson knew Dung was a driver on any Robinson brokered load. Because Robinson was wholly unaware of Dung's involvement on this shipment, there can be no implied agreement with Dung related to the work done hauling this load.

3

B.      **Plaintiff Failed to Prove that Robinson Had the Right to Control Dung at the Time of the Occurrence.**

Key to the determination of whether an agency existed is whether Plaintiff has proven that Robinson had the "right to control" the actions of Dung at the time of the Accident. (Ex. A, Court preliminary instruction.) Plaintiff has failed to prove this critical element.

- On this shipment, Antioch was the company that had exclusive control over how the work was done. (JTX 1, Contract at ¶ 11.) In fact, the alleged agent himself testified unequivocally that Antioch controlled his work. (Ex. B, Dung Tr. at 37-38.)

- As the owners of Antioch, Dung and Andrew were in control of the tractor trailer. (Ex. B, Dung Trial Tr. at 46; Andrew Nguyen Dep. Designation at 11, Exhibit E.)

- For the subject load, Antioch as the motor carrier was the company that was in control of whether or not there is an on-time delivery (Ex. B, Dung Trial Tr. at 48), and had the right to say "no" if Antioch did not want to deliver (Ex. B, Dung Trial Tr. at 44-45, 50; Ex. E, Andrew Dep. Designation at 15-17; CHRTX 19, Antioch RFA No. 9.)

- When Antioch hauled a load for Robinson, Dung and Andrew shared, and decided how to divide, driving responsibilities. (Ex. E, Andrew Dep. Designation at 11.)

- As the motor carrier, Antioch had the right to determine the best route for this load (Ex. B, Dung Trial Tr. at 54-55), and Dung determined what routes to take (CHRTX 21, Dung RFA No. 21); Robinson did not provide Dung specific instructions as to when to refuel or rest (CHRTX 21, Dung RFA No. 18)

Illinois law routinely rejects agency where the shipper or broker entity does not retain the right to control the manner in which the driver hauls freight. *Kolchinsky v. Bentley*, 15 C 10544, 2019 WL 423372, at *2 (N.D. Ill. Feb. 3, 2019); *Dowe v. Birmingham Steel Corp.*, 2011 IL App (1st) 091997, ¶¶ 31-33; *Wilson-McCray v. Stokes*, 01 C 1929, 2003 WL 22901569, at *4-6 (N.D. Ill. Dec. 9, 2003); *Boyle v. RJW Transp., Inc.*, 05 C 1082, 2008 WL 4877108, at *8-10 (N.D. Ill. June 20, 2008); *Scheinman v. Martin's Bulk Milk Serv., Inc.*, 09 C 5340, 2013 WL 6467525, at *12-13 (N.D. Ill. Dec. 9, 2013).

Contracts and amendments.

- Antioch expressly agreed and acknowledged that as the motor carrier it was an independent contractor and had exclusive control over the manner of transporting the freight, equipment used, and its drivers. (JTX 1, Contract at ¶ 11.)

- Antioch expressly disavowed an agency relationship with Robinson. (*Id*. at ¶ 11.)

- Antioch agreed to "the sole and exclusive care, custody and control of the shipment tendered by Robinson from the time [Antioch] picks up a shipment until delivery to consignee." (*Id*. at ¶ 12a.)

- In hauling shipments for Robinson, Antioch did what it promised to do in the contract. Robinson and Antioch adhered to the relationship defined in the Contract. (Ex. B, Dung Trial Tr. at 51-52; Ex. E, Andrew Dep. Designation at 12.)

- The Contract Addendum (JTX 5) demonstrated Antioch's agreement to haul the subject load for Robinson's customer as an independent contractor. (SUF ¶¶ 7, 12, 13; CHRTX 19, RFA Nos. 2, 8.)

Method of Dung's payment.

- Consistent with the Contract (JTX 1, Contract ¶ 11), Antioch paid Dung's wages for driving loads for Antioch: When Antioch hauled a load under contract with Robinson, Robinson would pay Antioch directly to Antioch's corporate bank account (Ex. B, Dung Trial Tr. at 57), and then Antioch would pay Dung and Andrew. (Ex. B, Dung Trial Tr. at 43; CHRTX 21, Dung RFA No. 12.)

- Robinson did not pay Dung any wages or salary for his work in connection with the transport of the subject load. (CHRTX 19, Antioch RFA No. 19; CHRTX 21, Dung RFA No. 13.)

- When he was driving for Antioch, Antioch paid Dung's expenses such as fuel and tolls (Ex. B, Dung Trial Tr. at 39-40).

Right to discharge.

- Antioch had exclusive control, supervision, and direction over its drivers like Dung. (JTX 1, ¶ 11.); Dung was an employee of Antioch, not Robinson (CHRTX 21, Dung RFA Nos. 2, 4.)

- Antioch was free to do business with other freight brokers (JTX 1, ¶ 2; Ex. B, Dung Trial Tr. at 56; Ex. E, Andrew Dep. Designation at 42).

- There was no evidence that Robinson had the right to fire Dung or otherwise terminate Dung's employment with Antioch at any time.

5

Who provides tools, materials or equipment.

Plaintiff will argue that Robinson through T-Chek gave cash to Antioch so that Antioch could purchase fuel for its trucks and, as such, Robinson provided "tools, materials, and equipment" to Dung. This argument fails. First, providing a cash advance to a contractor is not providing "tools, materials, or equipment." Cash is not tools, materials, or equipment. Rather, the uncontested evidence was that any cash advance from Robinson was payment to the carrier against the contract delivery rate that Antioch would negotiate with Robinson. (Ex. C, Pratt Dep. Designation at 109; Ex. D, Gershenson Dep. Designation at 42-44; Ex. E, Andrew Dep. Designation at 27.) The evidence is that Antioch could spend any advanced money on anything it wanted. (Ex. C, Pratt Dep. Designation at 108-109; Ex. E, Andrew Dep. Designation at 43.)

Furthermore, the "tools, materials, or equipment" prong of the agency determination fails because of the additional, uncontested facts:

- Antioch – not Robinson – provided the transportation equipment used for the shipment. (Ex. B, Dung Trial Tr. at 49; Ex. E, Andrew Dep. Designation at 12-13; CHRTX 19, Antioch RFA No. 22; CHRTX 21, Dung RFA No. 16.)

- When Dung hauled loads that were arranged by Robinson, he always used a tractor-trailer that was owned Antioch. (Ex. B, Dung Trial Tr. at 40.)

- For the subject load, Robinson did not provide Dung with the tractor-trailer, tools, and any other equipment for transporting this load. (CHRTX 21, Dung RFA No. 16.)

The nature of Dung's work in relation to Robinson's business; skills required

- Robinson is a third-party freight broker who contracts with independent and federally authorized motor carriers to efficiently move goods from point A to point B for its shipper customers. (JTX 1; SUF ¶¶ 1, 9.) Robinson does not contract with individual truck drivers. (JTX 1; SUF ¶¶ 7, 8, 12, 13.)

- In August of 2014, Dung was a commercial truck driver and 50% owner of Antioch Transport. (SUF ¶ 3; Ex. B, Dung Trial Tr. at 58.)

- The fact that Dung, as an employee driver of Antioch, was hauling a Robinson-brokered does not, as a matter of law, bootstrap Dung into Robinson's agent. *See*

6

> *Scheinman*, 2013 WL 6467525, at * 13 (fact that broker entity "stood to benefit from its arrangement" with motor carrier "is not enough, however, to establish a principal-agent relationship when there is no evidence that [broker entity] controlled [driver's] actions in hauling the [subject] load").

## II. ROBINSON'S WRITTEN AGREEMENT AND CONTRACT ADDENDUM *WITH ANTIOCH* DOES NOT CREATE AN AGENCY RELATIONSHIP *WITH DUNG.*

Separate and apart from Plaintiff's failure to establish any agreement between Robinson and Dung, the delivery provisions that Plaintiff pointed to in her case do not establish control over Dung's work for the separate and independent reasons that such provisions, which were agreed to by Antioch, merely represent the "result" of Antioch's agreement to transport produce; the terms in no way constitute control over the actual physical movement necessary to accomplish such result.

### A. Basic Delivery Instructions Do Not Constitute Control.

Under Illinois law, delivery instructions – such as pick-up and drop-off times and locations – are the most basic of contract terms in a delivery agreement. *Manahan v. Daily News-Tribune*, 50 Ill. App. 3d 9, 10-11 (3d Dist. 1977); *see also Wilson-McCray*, 2003 WL 22901569 at * 5; *see also* 32 ILLINOIS LAW & PRACTICE § 94 ("Delivery of the goods under a contract of sale normally is to be made at the time specified in the contract."). While Robinson contracted with Antioch to deliver the subject load within an agreed upon delivery window, Antioch as the duly certified motor carrier was best situated to determine how best to accomplish the contract "result" of meeting this agreed upon pick-up and delivery time. Absent control over the means and manner of the delivery, a shipper's agreement with an independent delivery company to transport goods in a timely manner from point A to point B does not create agency liability. *See Bauer v. Indus. Comm'n*, 51 Ill. 2d 169, 171 (1972); *Shoemaker v. Elmhurst-Chicago Stone Co., Inc.*, 273 Ill. App. 3d 916, 920-21; *Perkinson v. Manion*, 163 Ill. App. 3d 262, 266 (5th Dist. 1987); *Cable v. Perkins*, 121 Ill. App. 3d 127, 128-29 (3d Dist. 1984); *Manahan v. Daily News-Tribune*, 50 Ill. App. 3d 9,

14-16 (3d Dist. 1977); *Boyle*, 2008 WL 4877108 at * 8; *Wilson-McCray*, 2003 WL 22901569 at * 6.

    **B.**    <u>**Provision for Check-Call Updates Does Not Create an Agency.**</u>

There is no legal or factual basis to assert that check-call updates create an agency. First, this requirement does not involve Robinson *giving* any direction or instruction as to the means and manner in which Antioch or Dung should carry out the delivery. The notification requirement only involves providing information *to Robinson*. Under Illinois law, contractual requirements that information be provided to monitor the progress of the work do not constitute control over the means and manner in which that work is performed. *Kolchinsky*, 2019 WL 423372, at * 2; *Scheinman*, 2013 WL 6467525, at * 11; *Wilson-McCray*, 2003 WL 22901569 at * 6.

    **C.**    <u>**Provisions for Ensuring that the Goods Stay Refrigerated Do Not Constitute Control.**</u>

Plaintiff's argument that requiring that the trailer be set at a "continuous" 35 degrees or that the product be "pulped" fails and does not establish an agency as a matter of law. Although Robinson's contract passed along its customer's minimum requirements appropriate for this refrigerated load, this is no different than the pizza maker who properly asked that its independent contractors have equipment in their vehicles "to keep the food warm," *Bauer*, 51 Ill. 2d at 172 (affirming finding of independent contractor), or the maker of molten aluminum who required the use of "special vats" to transport its molten product, *Petersen v. U.S. Reduction Co.*, 267 Ill. App. 3d 775, 783-84 (1st Dist. 1994). As one court observed, contractual provisions such as "temperature must be maintained at 34 degrees continuously for the entire trip" or "pulp[ing] product after each pickup" are "clear common sense requirements that *any shipper of refrigerated products* would require before entrusting a load to a carrier or broker." in *Le v. Total Quality Logistics, LLC*, 431 P.3d 366, 374 (Okla. Civ. App. 2018) (emphases in original).

8

### D. The "Fine" Term Does Not Create an Agency.

Plaintiff's fine argument fails and does not create an agency. The alleged agent, Dung, admitted unequivocally and without contradiction or impeachment that he was not pressured by Robinson. (CHRTX 21, Dung RFA No. 6.) This unchallenged evidence distinguishes the *Sperl* case, in which an agency verdict was upheld based on the driver's testimony that she felt pressured by the fines from the Robinson load confirmation. *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1055 (3d Dist. 2011). Dung testified this was a normal load. (Ex. B, Dung Trial Tr. at 25.) Dung testified he was not in a rush on this load. (*Id*. at 58.) The designation of the load as "critical" had no influence on how Dung or Antioch did the job. (*Id*. at 52.) All these facts establish that the fine provisions of the load confirmation did not manifest control over Dung's work as a driver. There is simply no evidence at all that fines were ever an issue for Antioch or any of its drivers.

Second, a financial or fine provision does not create an agency as a matter of law. Illinois law has long held that financial provisions built into contracts to ensure successful performance by a contractor are insufficient to establish control. *See Lee v. Six Flags Theme Parks, Inc.*, 2014 IL App (1st) 130771, ¶¶ 12, 97 (no submissible evidence of control and therefore no triable issue of vicarious liability where contract term allowed Six Flags to cure defective work and "deduct the cost" from payment due contractor); *Calderon v. Residential Homes of Am., Inc.*, 381 Ill. App. 3d 333, 335 (1st Dist. 2008) (no submissible case of control against developer where, among other things, developer's contract with roofing company allowed developer to correct roofing defects and "deduct the cost from the contract price"); *see also Payne v. Vill. of Elwood*, 957 F.2d 517, 519 (7th Cir. 1992) (under IL Structural Work Act, no triable case existed that defendant Village was "in charge of" plaintiff's work even though Village "had the general right to withhold payment if not satisfied with the work").

## CONCLUSION

For all of the foregoing reasons, Robinson respectfully requests that pursuant to Federal Rule of Civil Procedure 50(a) the Court grant judgment as a matter of law in Robinson's favor and against Plaintiff on the claim that Dung Quoc Nguyen was Robinson's agent.

Respectfully submitted,

C.H. ROBINSON COMPANY, INC., and
C.H. ROBINSON WORLDWIDE, INC.

By:  /s/ William J. Ryan
      One of Their Attorneys

William J. Ryan
Eric J. Muñoz
Joseph R. Swee
SCANDAGLIA RYAN LLP
55 E. Monroe Street, Suite 3440
Chicago, Illinois 60603
Phone: (312) 580-2020
wryan@scandagliaryan.com
emunoz@scandagliaryan.com
jswee@scandagliaryan.com